Judge Underwood
delivered the opinion of tho Court.
This case is founded upon the 3d section of the act of 1793, concerning taverns, II. Digest, 1184. That section provides that “the justices of the county courts, shall fix the rates and prices to be paid at all taverns within their respective counties, at least twice a year, for liquors, lodging, diet, stablage, provender and pasturage, and may increase, or lessen the same, as to them may seem proper.” It also subjects every member of the court failing to fix the rates and prices, as required, to a fine of ten pounds, to be recovered by action of debt, or infor- *639 •usaíion in any court of record, having cognizance in similar cases, or on presentment of the grand jury.
The statute of 1797,2 Dithejusticea'of the county court to fix Jjites^itleast twice a year, means eaten-tlar ^’eaf‘ ■
jSstl0eSgfo°S" failure to fix tavern rates ^g^that there are tav-ernsinthe couri,7-
Shortridge, as one of the justices of the peace fof Henry county, was presented by the grand jury at the March term, 1829, of the Henry circuit court, for having, with the other justices for said county, failed to fix the tavern rates and prices, since the first Monday in November, 1827.
The presentment, also, charges that said Short-ridge and the other justices, did not, nor did any of them, fix the said rates and prices twice in the year, next succeeding the said first Mo„nday in November, 1827, nor was the same done at any time in the year last aforesaid, by the county court of said county. Verdict and judgment for Shortridge on plea of not guilty.
The judgment cannot be disturbed. It is not true in fact, that the tavern rates and prices were not fixed since the first Monday in November, 1827, as averred in the presentment, for the proof is conclusive, that they were fixed on the Tuesday after said first Monday. Upon ' that branch of the presentment, therefore, no recovery could be had.
We are of the opinion, that the charge, that the rates and prices were not fixed twice in the year, next succeeding the said first Monday in November, 1827, does not constitute an offence under the statute, as'the year meant by the statute is, according to our understanding of it, a calendar year to be computed from the 1st day of January, to the last day of December, inclusive. The averment, that the rates were not fixed at any one time in the year last aforesaid., referring thereby, to the year next succeeding the first Monday in November, 1827, is shewn to be untrue by the proof.
There are some questions presented, that it is proper to settle for precedent in future. The case of the commonwealth vs. South, II. Marshall, 237, requires a presentment in cases like the present, to allege that there were taverns in the county. This has been done in the present instance, and the question is, how must the allegation be proved? Can it he-done by parol testimony, oris record evidence- *640 that tavern licenses have been granted, requisite'? are opinion, that parol proof is sufficient.
Inn and tavern, the same, and may ex-cenTe- Keens-ed may retail spirits; unli-feot to’fine'if ‘it bo done. ’ Parol proof of onnn'oTtav-ora,sufficient,
The justices may fix the rates as often as they please, but if so long in commission must do it at least twice a year.
inn-keeper and a tavern keeper, are synoni-mous terms. Under tiie title, inns and inn-keepers, Bacon’s abridgment, letter B, page 660, an inn-keeper isnaid to be “a person who makes it his business entertain travellers and passengers, and provide lodging and necessaries for them, and their horses and attendants. Letter A, same page, it is said, that “keeping°f an !i,n *s 110 franchise, but a lawful trade open to every subject, and therefore, there is no-need of any license from'the king for that purpose.” licenses wore first granted to the keepers of alehouses in England, under statutory regulations; but these statutes did not extend to inns. A licensed tavern keeper, in this state, lias all the privileges of retailing, granted to ale-house keepers in England. But inns, taverns or houses, where travellers are entertained, may still exist 'as well without a license as with one.
The only difference between a licensed and unlicensed tavern keeper is, that the one incurs the responsibilities imposed by his bond, and is entitled to make profit by retailing spirits-by the small; whereas, the other incurs no such responsibility, and is finable for retailing without license. If the license made the tavern, and the county courts should refuse to grant licenses, it would result from the case of the commonwealth vs. South, that the justices could never be punished for failing to fix the rates. The tavern exists independent of the license, and therefore, parol proof of its existence is legitimate.
The justices are to fix the rates “dt least twice' during the year, which, as already stated, means the calendar year. The legislature foresatr, that periods of scarcity, in the course of the year, might resul t from causes not within human control, arid therefore, it was*made the duty of the justices at least twice in the year, to accommodate the rates to these fluctuations, and left them at liberty, to do so'as often as they might think proper. The justices may exercise their discretion as to the times during the year when they wifi fix the rates, if they permit the year to elapse without doing it twice, they arc liable if thrv *641 have been in commission so long as they might discharged the duty.
Benny, attorney general for commonwealth; Monroe, for defendant.
The presentment in the present case seems not to have been predicated upon the foregoing view of the statute. The defendant properly escaped punishment under it.
Wherefore, the judgment is affirmed.